IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY LAWRENCE, SR.,** | : | |
|     Petitioner | : | |
| | : | No. 1:22-cv-01113 |
| v. | : | |
| | : | (Judge Rambo) |
| **WARDEN E. BRADLEY,** | : | |
|     Respondent | : | |

## MEMORANDUM

Pending before the Court is pro se Petitioner Troy Lawrence, Sr. ("Petitioner")'s petition for a writ of habeas corpus filed pursuant to the provisions of 28 U.S.C. § 2241 ("Section 2241"). (Doc. No. 1.) Petitioner asserts that he was wrongfully found guilty of a disciplinary charge, which resulted in, inter alia, the loss of good-conduct time. (Id.) Also pending before the Court is Petitioner's motion to expedite these habeas proceedings. (Doc. No. 9.) For the reasons set forth below, the Court will deny Petitioner's Section 2241 petition and deny, as moot, his pending motion.

**I.  BACKGROUND**

Petitioner, a prisoner in the custody of the Federal Bureau of Prisons ("BOP"), is currently serving an aggregate three-hundred (300) month sentence imposed by the United States District Court for the Northern District of Illinois for narcotics and firearms offenses. (Doc. No. 7-1 at 3, ¶ 3.) His projected release date, via good-conduct time, is August 2, 2023. (Id.; id. at 5.)

The facts underlying the imposition of the disciplinary sanctions against Petitioner are as follows. On January 12, 2022, at United States Penitentiary Canaan ("USP Canaan"), in Waymart, Pennsylvania, Petitioner was issued Incident Report Number 3586283 ("Incident Report"), charging him with a violation of Prohibited Act Code 104—Possessing a Dangerous Weapon.[1] (Doc. No. 7-1 at 8.) The Incident Report described the violation of Code 104 as follows:

> On Jan 12, 2022 while working as the F-A#2 officer, I was securing the upper tier of the unit. [Petitioner] at this time . . . exited the upper tier showers and was walking towards steps to turn to his cell. As [Petitioner] approached me, I noticed he had several shower items in his hands. I continued to watch him and at this point he clearly drop[ped] an item from his belongings to the floor which appeared to be a prison made weapon. [Petitioner] then hurried and picked the item up. I ordered [Petitioner] to give me the weapon and he complied. The weapon was approximately 6 ½ inches in length sharpened to a point on one end and covered with a sheath. Also had a brown tape handle on the other end. I then conducted a pat search of [Petitioner] which yielded [a] negative result. [Petitioner] was then escorted to Lieutenant's office.

(Id.)

M. Young, the investigating lieutenant, delivered a copy of the Incident Report to Petitioner on the same date of the incident. (Id.) Petitioner was read his rights, and he declined to make a statement at that time. (Id. at 10.) Based upon the

---

[1] The BOP's prohibited acts are set forth in 28 C.F.R. § 541.3, and describes Code 104 as follows: "Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, ammunition, or any instrument used as a weapon." See 28 C.F.R. § 541.3 (Table 1, 104).

2

written account of the reporting officer and a review of the supporting documents, (i.e., a chain of custody log and photographic evidence), the investigating lieutenant found that the charged violation of Prohibited Act Code 104 was valid and warranted. (Id.) As a result, Petitioner was sent to the special housing unit, and the Incident Report was forwarded to the Unit Disciplinary Committee ("UDC") and the Disciplinary Hearing Officer ("DHO") for further processing. (Id.)

On January 13, 2022, Petitioner appeared for an initial hearing before the UDC. (Id. at 9.) According to the Incident Report, Petitioner told the UDC that he was "holding the weapon for someone else[,]" who would "set up and take ownership." (Id.) According to Petitioner, however, he also "asked for" a witness by the name of Terrance Williams ("Inmate Williams"), and he wrote down what Inmate Williams' testimony would be. (Doc. No. 1 at 6.) Ultimately, the UDC found that the charged violation was warranted based upon the greater weight of the evidence and thus referred the Incident Report to the DHO for a hearing. (Doc. No. 7-1 at 9.)

The record demonstrates that Petitioner was advised of his rights before the DHO. (Id. at 11-12.) More specifically, Petitioner signed a form, titled "Notice of Discipline Hearing before the (DHO)[.]" (Id. at 12.) This form indicates that Petitioner did not wish to have a staff representative assist him during the hearing, but that he wished to call a witness who would testify to the following: "He is going

to take ownership of weapon[,] was holding it for him." (Id.) According to that form, a witness was identified, but the name of that witness has been redacted. (Id.) Additionally, Petitioner signed a form, titled "Inmate Rights at Discipline Hearing[,]" wherein Petitioner acknowledged that he had been advised of his rights, including: (1) the right to receive a written copy of the charges at least twenty-four (24) hours prior to the hearing; (2) the right to have a staff member who is reasonably available to serve as a staff representative at the hearing; (3) the right to call witnesses, present witness statements, and introduce documentary evidence, "provided institutional safety would not be jeopardized;" (4) the right to present a statement or to remain silent; (5) the right to appear throughout the disciplinary hearing; and (6) the right to receive written notice of the DHO's decision and the facts supporting the decision. (Id. at 11.)

The Court observes that both of these forms were signed, not only by Petitioner, but also by B. Roberts, a staff member. The Court further observes that, in his petition and supporting memorandum of law, Petitioner argues that "Counselor Roberts put down a person for [his] witness that does not exist and [that Counselor Roberts] attached a statement to this fictitious person which was used at [Petitioner's] DHO hearing, clearly violating [his] [d]ue [p]rocess rights." (Doc. Nos. 1 at 6; 2 at 6.) Petitioner, however, does not identify who Counselor Roberts

had "put down" as a witness, and the Court has been unable to locate such a witness statement in the record.

That said, on January 24, 2022, Petitioner appeared before the DHO. (Doc. No. 7-1 at 13.) The DHO states in his report at follows:

> At the onset of this hearing, [Petitioner] was advised of his rights before the DHO. Prior to this hearing, he waived staff representation and requested witness testimony. Prior to the start of the hearing, [Petitioner] elected to waive witness testimony and signed the waiver form as such. This was dated and affirmed by the DHO. With that the hearing moved forward.
>
> [Petitioner] elected not to make a verbal statement before the DHO[.] However, he did produce a written denial of possession that also asks for expungement of the charge.

(Id.) In support of the DHO's report, Respondent has submitted into the record a form titled, "Staff Representative/Witness Waiver Form." (Id. at 18.) This form is dated January 24, 2022, i.e., the date of the hearing. (Id.) Respondent contends that Petitioner signed this form, indicating that he waived his right to a staff representative and his right to present witness testimony (Doc. No. 7 at 3), but Petitioner argues that he was handcuffed behind his back during this time and never signed the form (Doc. Nos. 2; 8 at 6).

In addition, Petitioner argues that the DHO "used unethical coercion and manipulative tactics by threatening [Petitioner] with more time in the [special housing unit]" thereby "forc[ing] [Petitioner] to waive [his right to present] witness testimony based on the weather and COVID-19[,] clearly violating [his] [d]ue

5

[p]rocess rights." (Doc. Nos. 1 at 6; 2 at 2 (arguing that the DHO stated as follows: "that [his] witness statement was the stupidiest [sic] [thing] he ever heard and if [Petitioner] didn't waive said witness and his statement that it would be another 30 days before I get another hearing, and based on the weather and COVID-19 that it would be nearly impossible to get said witness to the hearing").)

Ultimately, the DHO found, based upon the greater weight of the evidence, that Petitioner committed a violation of Prohibited Act Code 104—Possessing a Dangerous Weapon. (Id. at 14-15.) The DHO based this finding on the reporting officer's written account of the underlying incident, the chain of custody log, and the photographic evidence. (Id.) As a result, the DHO sanctioned Petitioner with a disallowance of forty-one (41) days of good-conduct time, thirty (30) days of disciplinary segregation, and loss of commissary, MP3 player, and email privileges for one year. (Id. at 16.) The DHO also sanctioned Petitioner with loss of phone privileges for one year, which was suspended, pending one-hundred and eighty (180) days of "clear conduct." (Id.) The DHO explained his reasoning for these sanctions as follows:

> The action or behavior on the part of any inmate to possess, manufacture or introduce any type of weapon, firearm, or knife capable of inflicting serious injury to another person, whether inmate or staff member, threatens the health, safety, and welfare of not only the inmate involved, but all other inmates and staff alike. In the past, this action/behavior has been shown to result in more serious injuries. Weapons of this nature pose the risk of serious bodily harm to other inmates or staff and circumvent normal security and

>detection measures. Behavior of this nature is egregious and cannot
>be permitted.

(Id.)

Petitioner was advised of the DHO's findings, the specific evidence relied upon, the sanctions imposed, and the reasons for those sanctions. (Id. at 17.) Petitioner was also advised of his right to appeal the DHO's decision. (Id.) On January 28, 2022, several days after the hearing, Petitioner was provided with a copy of the DHO's report. (Id.) Petitioner alleges that he subsequently exhausted his administrative remedies with respect to the Incident Report and his disallowance of good-conduct time. (Doc. No. 2 at 3.)

Following his exhaustion efforts, Petitioner filed his Section 2241 petition in this Court on July 18, 2022 (Doc. No. 1), along with a supporting memorandum of law (Doc. No. 2), and various exhibits (Doc. Nos. 2-2 through 2-9). Petitioner seeks the expungement of the Incident Report and to "restore all sanctions and grant [his] immediate release." (Doc. No. 1 at 7.) On August 3, 2022, the Court deemed the petition filed, directed service of the petition on Respondent (the Warden at USP Canaan), and directed Respondent to respond to the allegations contained in the petition within twenty (20) days. (Doc. No. 5.) On September 23, 2022, Respondent filed a response (Doc. No. 7), to which Petitioner filed a reply (Doc. No. 8). Petitioner then filed a motion to expedite these habeas proceedings. (Doc. No. 9.)

7

Thus, the instant Section 2241 petition, which has been fully briefed by the parties, is ripe for the Court's resolution. For the reasons discussed below, the Court will dismiss the petition and deny, as moot, the pending motion.

## II. DISCUSSION

Generally speaking, Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate who challenges "not the validity but the execution of his sentence." See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas"). While "the precise meaning of 'execution of the sentence' is hazy[,]" see id. at 242, the United States Court of Appeals for the Third Circuit ("Third Circuit") has defined this phrase to mean "put into effect" or "carry out." See id. at 243 (citation and internal quotation marks omitted).

As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody. See, e.g., Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990) (finding that a federal inmate's petition is actionable under Section 2241, where the inmate attacks the term of his custody by challenging the manner in which the BOP is computing his federal sentence); Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008) (noting that a challenge to a disciplinary action

resulting in the loss of good-conduct time is properly brought pursuant to Section 2241, because "the action could affect the duration of the petitioner's sentence" (citations omitted)).

Here, the Court treats Petitioner's Section 2241 petition as asserting a due process challenge under the Fifth Amendment to the United States Constitution based upon allegations that the BOP wrongfully deprived him of good-conduct time as a disciplinary sanction. (Doc. Nos. 1, 2.) As such, the Court finds that Petitioner's due process challenge is properly brought pursuant to the provisions of Section 2241. That being said, the Court now turns to the governing legal standard.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" See U.S. Const. amend. V. Prisoners have a constitutionally protected liberty interest in good-conduct time. See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974). However, "while prisoners retain certain basic constitutional rights, including the protections of the [D]ue [P]rocess [C]lause, prison disciplinary hearings are not part of criminal prosecution, and inmates' rights at such hearings may be curtailed by the demands and realities of the prison environment." See Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing Wolff, 418 U.S. at 555-56.)

In Wolff, the United States Supreme Court set forth the due process protections that prisoners are entitled to "when prison officials seek to deprive them

9

of good-time credits[.]" See Burns v. PA Dep't of Corr., 642 F.3d 163, 171-72 (3d Cir. 2011). Those protections require: (1) an impartial decision-making body; (2) written notice of the charges, which must be given to the prisoner no less than twenty-four (24) hours before his appearance at the disciplinary hearing so that he can marshal the facts and prepare a defense; (3) the opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals;" and (4) a written statement by the fact finder as to the evidence relied upon and the reasons for the disciplinary action. See Wolff, 418 U.S. at 563-71. Additionally, the United States Supreme Court has explained that, where an illiterate prisoner is involved or where the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence that is necessary for an adequate command of the case, the prisoner "should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent [prisoner] designated by the staff." See id. at 570.

Where, as here, a prisoner challenges a disciplinary proceeding that deprived him of good-time credits, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke [such] credits." See Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). In other words, "[t]his standard is met if there was some evidence

from which the conclusion of the [disciplinary board] could be deduced[.]" See id. (citation and internal quotation marks omitted).  Thus, determining "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." See id. Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." See id. at 455-56 (emphasis added) (citations omitted).

The United States Supreme Court has declined to embrace "a more stringent evidentiary standard as a constitutional requirement." See id. at 456.  And, in declining to do so, the Supreme Court has explained as follows:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. See Wolff, 418 U.S., at 562-563[.] The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, id. at 556[,] and neither the amount of evidence necessary to support such a conviction, see Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), nor any other standard greater than some evidence applies in this context.

See id.

Having set forth the governing legal standard, the Court now turns to the two (2) grounds for relief that Petitioner has set forth in his Section 2241 petition.  The Court notes that both of these grounds concern Petitioner's right to present witness

testimony at his disciplinary hearing. Thus, the Court's discussion below is focused on whether he was afforded this particular due process protection and whether the DHO's decision was supported by some evidence that he possessed the subject weapon.

In his first ground for relief, Petitioner asserts that the DHO "used unethical coercion and manipulative tactics by threatening [Petitioner] with more time in the [special housing unit]" thereby "forc[ing] [him] to waive [his right to present] witness testimony based on the weather and COVID-19" in violation of his due process rights. (Doc. Nos. 1 at 6; 2 at 4-6.) As previously discussed above, prisoners are afforded due process protections during prison disciplinary proceedings that result in the loss of good-conduct time, including the opportunity to call witnesses. See Wolff, 418 U.S. at 566.

However, where a petitioner claims that he was denied the opportunity to call a witness, he still must show that he was prejudiced by this denial in order to be entitled to relief. See, e.g., Elkin v. Fauver, 969 F.2d 48, 53 (3d Cir. 1992) (agreeing that "[i]n the absence of a recent pattern of violations, it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial[, and that,] surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison

rules infraction despite a harmless error in adjudicating the violation" (citation and internal quotation marks omitted)); Griffin v. Ebbert, 640 F. App'x 181, 184 (3d Cir. 2016) (unpublished) (examining whether the Section 2241 petitioner had suffered any prejudice from the eighteen (18) month delay in receiving the DHO's report and concluding that, because the petitioner had failed to show prejudice, he was not denied due process (citation omitted)); Pachtinger v. Grondolsky, 340 F. App'x 774, 776-77 (3d Cir. 2009) (unpublished) (concluding that the Section 2241 petitioner's due process rights were not affected by the absence of his cellmate's testimony at his disciplinary hearing, where the petitioner "was not prejudiced" by its absence); see also Wilson v. Ashcroft, 350 F.3d 377, 381 (3d Cir. 2003) (stating, in the immigration context, that "there would be no due process violation in the absence of prejudice").

Here, although Petitioner contends that he was denied due process because the DHO "coerc[ed]," "manipulat[ed]," and "forced" him to waive his right to call Inmate Williams as a witness (Doc. No. 1 at 6), the Court finds that this contention lacks any support. Petitioner neither describes the expected testimony of this witness, nor explains how this witness's testimony would have supported Petitioner's defense.² Thus, the Court finds that Petitioner has failed to show that he

---

² Notably, Petitioner's Section 2241 petition, memorandum of law, and reply brief contains only conclusory allegations concerning how the DHO's denial to allow this testimony impacted Petitioner's defense during his disciplinary hearing. See, e.g.,

was prejudiced by the absence of Inmate Williams' testimony at his disciplinary hearing. And, absent such a showing from Petitioner, the Court further finds that the record contradicts his contentions. Indeed, the record suggests that he elected to waive his right to call Inmate Williams as a witness at his hearing. (Doc. No. 7-1 at 13 (containing the DHO's report, wherein the DHO explains that, although Petitioner had—prior to the date of the disciplinary hearing—requested a witness, Petitioner ultimately waived this right at the start of the hearing); id. at 18 (containing a "Staff Representative/Witness Waiver Form[,]" wherein the DHO initialed and signed the document to confirm that Petitioner had waived his right to present the testimony of his previously requested witness).) Accordingly, for all of these reasons, the Court concludes that Petitioner is not entitled to habeas relief on ground one of the petition.

Turning to ground two of the petition, Petitioner asserts that, at his initial hearing before the UDC, he "asked for" Inmate Williams as a witness, and he wrote down what Inmate Williams' testimony would be. (Doc. No. 1 at 6.) Petitioner argues, however, that "Counselor Roberts put down a person for [his] witness that does not exist and [that Counselor Roberts] attached a statement to this fictitious

---

(Doc. No. 2 at 5 (stating that "not allowing said witness to testify at the hearing had a substantial and injurious effect on him"); Doc. No. 8 at 5 (stating that the DHO's denial "prejudice[d] [him] from presenting his exculpatory evidence of how said weapon got into [his] shower items as [he] was exiting the shower area").)

14

person which was used at [Petitioner's] DHO hearing," in violation of his due process rights. (Id.; Doc. No. 2 at 6.)

The Court finds, however, that these contentions lack any support. Petitioner does not identify who Counselor Roberts had "put down" as a witness, and the Court has been unable to locate such a witness statement in the record. Moreover, the Court observes that the DHO's report does not include any reference to a witness statement. (Doc. No. 7-1 at 13-17.) Thus, there is no basis in the record to conclude that the DHO relied upon this purported witness statement in reaching his findings or in imposing the various sanctions against Petitioner. As a result, the Court concludes that Petitioner has not shown that he was prejudiced by Counselor Roberts' conduct and, therefore, Petitioner is not entitled to habeas relief on ground two of the petition.

Finally, the Court finds that the DHO's decision was supported by some evidence of possessing the weapon, which is sufficient to uphold Petitioner's disallowance of good-conduct time. More specifically, the record reflects that the DHO relied upon the written account of the reporting officer who witnessed Petitioner possessing the weapon, the chain of custody log for the weapon, and the photographic evidence depicting the weapon as a six and a half (6 ½) inch grey sharpened metal weapon with a brown tape handle. (Id. at 14-15.) This evidence plainly satisfies the "some evidence" standard.

Additionally, the Court notes that, although it is not clear what Inmate Williams would have testified to during his disciplinary hearing, the record suggests that Inmate Williams may have testified to the fact that it was his weapon (not Petitioner's) and that Petitioner was simply "holding" the weapon for him. See, e.g. (Doc. Nos. 2 at 2; 7-1 at 9, 12, 15; 8 at 4-5). Even if the Court accepts this allegation as true, however, the Court still finds that the "some evidence" standard has been satisfied by application of the constructive possession doctrine. See Brown v. Recktenwald, 550 F. App'x 96, 98 (3d Cir. 2013) (unpublished) (concluding that some evidence of construction possession was enough to support the DHO's decision, "and that is all that is required under Hill to satisfy due process"); Reynolds v. Williamson, 197 F. App'x 196, 199 (3d Cir. 2006) (unpublished) (finding that, "[i]n the absence of direct evidence indicating an inmate's guilt, the 'some evidence' standard may be satisfied by application of the constructive possession doctrine . . ." (citation omitted)).

Thus, for all of these reasons, the Court concludes that the requirements of due process were satisfied here. As a result, the Court will deny Petitioner's Section 2241 petition. See Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989)

(explaining that the "due process requirements in [the prison disciplinary context] context are minimal, and they are met here").[3]

## III.   CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will deny the instant Section 2241 petition.  (Doc. No. 1.)  In addition, the Court will deny Petitioner's pending motion as moot.  (Doc. No. 9.)  An appropriate Order follows.

Dated: June 15, 2023                                                       s/ Sylvia H. Rambo
                                                                                      SYLVIA H. RAMBO
                                                                                      United States District Judge

---

[3]  To the extent that Petitioner asserts, for the <u>first</u> time in his reply brief, that he "never received a copy of the UDC finding" (Doc. No. 8 at 3), the Court notes that Petitioner has failed to demonstrate that he suffered any prejudice as a result thereof.

17